THE STATE V. LAWN, *Appellant.*

**Indictment:** LARCENY: CATTLE. An indictment under section 1307, Revised Statutes 1879, for the larceny of neat cattle, is sufficient if it charges the theft of "certain cattle, to-wit, one steer," and the value need not be laid. The term "cattle" designates domestic quadrupeds collectively, but the term "neat cattle" includes only cattle of the bovine species. A steer belongs to the class of neat cattle, and it would be sufficient to use the word "steer" without employing the term "cattle" or "neat cattle."

*Appeal from Jefferson Circuit Court.*—HON. J. L. THOMAS Judge.

AFFIRMED.

*Dinning & Byrns* and *McMullin* for appellant.

*D. H. McIntyre,* Attorney General, for the State.

The term "cattle" is generic and includes the statutory term "neat cattle." R. S., § 1307. A steer belongs to the class "neat cattle," and courts will take judicial notice of that fact. *State v. Hambleton,* 22 Mo. 452. It would have been sufficient to use the word "steer," without any other designation. *State v. Lange,* 22 Tex. 591; *State v. Abbott,* 20 Vt. 537. Where the statute makes the stealing of specific property grand larceny, the value need not be laid in the indictment. *State v. Daniels,* 32 Mo. 558.

MARTIN, C.—The defendant was indicted, tried and convicted for stealing a steer. His punishment was assessed at two years in the penitentiary. Upon taking his appeal, he made application in the Supreme Court for stay of execution, filing in support of it a statement and brief, in which he endeavored to disclose many errors committed against him in the trial. Upon consideration of his statement and brief, his application for a stay of execution was denied. No further brief or statement has been submitted in the prosecution of his appeal. I will notice the material

16—80

objections urged by him in his original brief, for the pur-
pose of determining whether the record presents any good
ground for reversing the judgment.

It is objected that the indictment is insufficient, in fail-
ing to allege the value of the steer, so as to bring the
charge within the statute defining grand larceny.   The in-
dictment reads that, "Frank Lawn        *       *      certain
cattle, to-wit, one steer of the property and chattels of
James Duff, then and there being found, then and there did
feloniously steal, take and carry away."   The statute which
makes the felonious taking of this species of property grand
larceny, without regard to value, uses the term "neat cat-
tle."   R. S. § 1307.   It is argued that the indictment to be
good under this section, ought to have charged the taking
and carrying away of "neat cattle."   I do not think this
objection is well taken.   The term cattle designates domes-
tic quadrupeds collectively, and has been held to include
horses, sheep and swine, as well as animals of the bovine
species.   But the term "neat cattle" includes only cattle
of the bovine species.   A steer belongs to the class of "neat
cattle."   And as the defendant was indicted for stealing a
steer, he was sufficiently informed of the crime charged.
He could not assume that he was being prosecuted for steal-
ing any other class of cattle than the class of "neat cattle,"
to which the steer belongs.   I think it would have been
sufficient to use the word steer without employing the term
"cattle" or "neat cattle."   *State v. Hambleton,* 22 Mo. 452;
*State v. Lange,* 22 Tex. 591; *State v. Abbott,* 20 Vt. 537;
*State v. Daniels,* 32 Mo. 558.

The court gave an instruction to the effect that recent
possession of stolen property is in presumption of law guilty
possession, in the absence of any explanation leading to a
different inference.   It is not claimed that the instruction
announced anything erroneous in law, but that there was
no evidence of recent possession of the stolen property to
justify the court in giving it.   I am unable to accept this
construction of the evidence.   The witnesses for the State

The State v. Lawn.

testified that they went to the premises of defendant very shortly after the steer was missing; that they found between the defendant's dwelling and his straw-stack the hide of the steer, excepting the part on the head; that it was perforated with a bullet hole on each side; that about forty yards further on they found the head of the steer in a gully in the woods, all of which they carried away; that the hide was identified as the hide of the missing steer, and that the head was so identified. The skin was on it, and the owner's son recognized it as his father's steer by two warts on the forehead. On the day of the arrest, the witnesses for the State found fresh beef in the defendant's house in a packing box, consisting of two pieces of hind quarter, some neck and ribs. All together it filled up a two bushel wheat sack. There was also some beef cooked in a pot in defendant's house. The beef was carried away in a sack by witness, James Duff, Jr., who was the owner's son.

No explanation of these facts was attempted by defendant, either by the testimony of witnesses or by himself in the statement made by him at the trial. He admitted that about the time the steer was missing it was with his cattle, but that he did not know it was missing, that it was running with his cattle near his house about two weeks before his arrest. He ventures no explanation about the hide and head found on his premises, and declared that he did not know where the fresh beef came from which was found in his house, and which he admits he had been cooking in a pot. He said that he made no inquiry as to where it came from. When the defendant was arrested he declared that if he had succeeded in getting into the house before the arrest, it would not have been good for the arresting party.

I do not find any errors in the record to the prejudice of defendant, and think the judgment should be affirmed, All concurring, it is so ordered.